USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  March 15, 2013

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x

JOHN WILEY & SONS, INC.,

      Plaintiff

           -against-

JOHN DOE NOS. 1-22

      Defendants

12 Civ. 4231 (PAC)

**OPINION & ORDER**

------------------------------------------------------------- x

JOHN WILEY & SONS, INC.,

      Plaintiff

           -against-

JOHN DOE NOS. 1-24

      Defendants

12 Civ. 4232 (PAC)

**OPINION & ORDER**

------------------------------------------------------------- x

JOHN WILEY & SONS, INC.,

      Plaintiff

           -against-

JOHN DOE NOS. 1-21

      Defendants

12 Civ. 4730 (PAC)

**OPINION & ORDER**

------------------------------------------------------------- x

HONORABLE PAUL A. CROTTY, United States District Judge:

In these actions, Plaintiff John Wiley & Sons, Inc. ("Wiley") alleges copyright and trademark infringement, trademark counterfeiting, and unfair competition against a total of 67 John Does. In all three matters, the legal issues currently at bar are identical: pursuant to Fed. R. Civ. P. 26(d), Wiley has applied *ex parte* for an order authorizing the issuance of a subpoena on

1

a number of internet service providers[1] (the "ISPs") for documents sufficient to locate and identify each of the individual defendants. For the following reasons, the Court GRANTS Wiley's application in part and DENIES it in part.

## BACKGROUND

Wiley is one of the world's largest publishing houses. It alleges that, without authorization, Defendants have made and distributed unauthorized copies of three books to which Wiley holds the copyrights and which contain trademarks owned by Wiley, via BitTorrent, a form of peer-to-peer file sharing software. Specifically, the books at issue are Windows 7 Secrets (No. 12 Civ. 4231); The Six-Figure Second Income (No. 12 Civ. 4232); and The Fat Burning Bible (No. 12 Civ. 4730). BitTorrent allows users to simultaneously send and receive portions of a particular file with numerous other users of the software, who are individually called "peers" and collectively known as a "swarm." Once an individual user has downloaded a portion of the file, it is immediately shared with other members of the swarm. The files are continuously distributed by each peer until they close the BitTorrent software.

When using BitTorrent, peers broadcast their internet protocol address ("IP address"). No other information is available about the software's largely anonymous users. Using the IP address, Wiley has been able to identify the location and ISP of each of the Defendants, all of whom are located in New York State. Without subpoenaing further information from the ISPs, which it now seeks to do, it is unable to contact or further identify the Defendants.

---

[1] The ISPs at issue are AT&T Internet Services (Wayport Inc.); Comcast Cable Communications, Inc.; Consolidated Communications, Inc.; CSC Holdings LLC (Optimum Online®); Frontier Communications of America, Inc.; Helpful Internet, Inc.; RCN Corporation; Rural Broadband Network Services LLC; Time Warner Cable, Inc. (Roadrunner Holdco LLC); and Verizon Online LLC.

**DISCUSSION**

**I.     Joinder**

Courts throughout the country are deeply divided regarding the propriety of joining numerous defendants together in a single lawsuit based on allegations that they unlawfully shared the same electronic file using BitTorrent software.  See, e.g. Next Phase Distribution, Inc. v. Does 1-27, 284 F.R.D. 165, 168-69 (S.D.N.Y. 2012) (collecting cases from this district).  "The fact that multiple courts, in well-reasoned opinions, have arrived at opposing conclusions suggests that there is no clearly correct answer to this question." Id. at 170.

Joinder of defendants is permitted in a single action if "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2).  "While the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties, courts maintain broad discretion concerning whether to permit joinder" and may sever defendants based on an evaluation of whether joinder "would comport with the principles of fundamental fairness, prejudice either side, or confuse and complicate the issues for the parties involved." Next Phase, 284 F.R.D. at 167-68 (internal quotations omitted).

Courts approving of joinder in this context have done so based on the theory that "participation of defendants in the same swarm constitutes 'the same transaction, occurrence, or series of transactions or occurrences' for purposes of the joinder rule."[2]  Malibu Media, LLC v. Does 1-5, 285 F.R.D. 273, 277-78 (S.D.N.Y. 2012).  Judge Buchwald has explained that where

---

[2] This Court has previously held that defendants were not subject to joinder where plaintiff failed to allege that they participated in the same swarm, but it did not address whether alleging participation in the same swarm was itself sufficient for purposes of joinder.  DigiProtect USA Corp. v. Does 1-240, No. 10 Civ. 8760, 2011 WL 4444666, at *3 n.3 (S.D.N.Y. Sept. 26, 2011).

the defendants participated in the same swarm, "each defendant's participation in the swarm facilitated . . . the participation of the other defendants" due to the nature of BitTorrent software. Id. at 277.  This is true even where the defendants are not alleged to have participated in the same swarm simultaneously, because "'the law of joinder does not have as a precondition that there be temporal distance or temporal overlap,'" and though "the period at issue may therefore appear protracted by ordinary standards, the doctrine of joinder must be able to adapt to the technologies of our time."  Id. (quoting Patrick Collins, Inc. v. Does 1-21, 282 F.R.D. 161, 168 (E.D. Mich. 2012)).  While defendants may eventually assert individual defenses, they can be addressed when actually raised.  Id. at 278.  Finally, some courts have found "that severance at this stage in the litigation would introduce 'significant obstacles in [plaintiffs'] efforts to protect their copyrights from illegal file-sharers and . . . needlessly delay their cases,'" Digital Sins, Inc. v. Does 1-176, 279 F.R.D. 239, 244 n.6 (S.D.N.Y. 2012) (quoting Call of the Wild Movie, LLC v. Does 1-1,062, 770 F. Supp. 2d 332, 344 (D.D.C. 2011)) ("Digital Sins 176"), and that "requiring aggrieved parties to file hundreds or even thousands of separate copyright infringement actions would neither be cost efficient for the plaintiffs nor promote convenience or judicial economy for the courts."  Id.

Nevertheless, the Court finds the arguments militating against joinder to be more persuasive.  As described by Judge McMahon, the BitTorrent cases are comprised of a large number of "separate and discrete transactions in which [many] individuals used the same method to access a file via the Internet" and in which there is "no concerted action whatever, and no series of related occurrences – at least, not related in any way except the method that was allegedly used to violate the law."  Digital Sins, Inc. v. Does 1-245, No. 11 Civ. 8170, 2012 WL 1744838, at *2 (S.D.N.Y. May 15, 2012) ("Digital Sins 245").  "The allegation that defendants

have merely committed the same violation in the same way does not satisfy the standard for permissive joinder because there are 'no litigation economies to be gained from trying what are in essence [many] different cases together.'" SBO Pictures, Inc. v. Does 1-20, No. 12 Civ. 3925, at *1 (S.D.N.Y. June 5, 2012) (quoting Digital Sins 245, 2012 WL 1744838, at *3). Since many, if not all, of the defendants in such cases may raise unique defenses, plaintiffs would be required to prove their case against each defendant in a separate and independent manner. "As a result, case management and the litigation process . . . would quickly become complicated and unmanageable." Next Phase, 284 F.R.D. at 170. For example, "each Defendant would have the right to be present at every other Defendant's deposition – a thoroughly unmanageable and expensive ordeal" that would create a "cumbersome procedural albatross." Pac. Century Int'l Ltd. v. Does 1-101, No. 11 Civ. 2533, 2011 WL 5117424, at *3 (N.D. Cal. Oct. 27, 2011).

Many of the defenses that courts have encountered in BitTorrent cases stem from the nature of identifying defendants solely by IP addresses, which leads to innumerable false-positives. The majority of American homes employ wireless routers, which allow a single IP address to support multiple computers simultaneously. In re BitTorrent Adult Film Copyright Infringement Cases, Nos. 11 Civ. 3995, 12 Civ. 1147, 12 Civ. 1150, 12 Civ. 1154, 2012 WL 1570765, at *3 (E.D.N.Y. May 1, 2012). In this sense, an IP address is "much like a telephone number [that] can be used for any number of telephones," such that "it is no more likely that the subscriber to an IP address carried out a particular computer function . . . than to say an individual who pays the telephone bill made a specific telephone call." Id.; see also Next Phase, 284 F.R.D. at 170. As a result, the plaintiff in a similar suit conceded that as many as 30% of the

defendants identified via IP address would be individuals who had not engaged in the alleged copyright infringement.[3]  Digital Sins 176, 279 F.R.D. at 242.

The only sense in which there are economies to be gained from allowing joinder in such cases accrues exclusively to the benefit of plaintiffs, who are not required to pay separate filing fees for initiating litigation against each individual defendant.  "However, the desire to avoid paying statutorily mandated filing fees affords no basis for joinder."  Digital Sins 245, 2012 WL 1744838, at *3.  These fees serve "two salutary purposes.  First, [they are] a revenue raising measure. . . .  Second, [they] act[] as a threshold barrier, albeit a modest one, against the filing of frivolous or otherwise meritless lawsuits."  In re Diet Drugs, 325 F. Supp. 2d 540, 541 (E.D. Pa. 2004).  By bringing only three actions rather than 67, Wiley presently avoids paying the mandatory $350 filing fee in a total of 64 cases, saving over $22,000 in these matters alone.  See 28 U.S.C. § 1914(a).  Though the Court may decline to address the propriety of joinder *sua sponte* while the "action is in its infancy [because] each defendant will have ample time to challenge his inclusion in the litigation," John Wiley & Sons, Inc. v. Does 1-27, No. 11 Civ. 7627, 2012 WL 364048, at *1-2 (S.D.N.Y. Feb. 3, 2012), "postponing a decision on joinder in lawsuits similar to this action results in lost revenue of perhaps millions of dollars [in filing fees] and only encourages Plaintiffs . . . to join (or misjoin) as many doe defendants as possible."  Arista Records, LLC v. Does 1-11, No. 07 Civ. 2828, 2008 WL 4823160, at *5 (N.D. Ohio Nov. 3, 2008).  The risk of potentially incentivizing plaintiffs "to draw numerous innocent internet

---

[3] Many of the recent BitTorrent cases, particularly those involving pornography, address a related fear that approving subpoenas to ISPs regarding large numbers of John Doe defendants may aid plaintiffs in employing abusive litigation tactics, including coercing unjust settlement from innocent defendants.  See, e.g., In re BitTorrent Adult Film Copyright Infringement Cases, 2012 WL 1570765, at *9-11; Next Phase, 284 F.R.D. at 170; Digital Sins 176, 279 F.R.D. at 242.  This concern is not present in the instant cases, which do not involve pornographic works, see In re BitTorrent Adult Film Copyright Infringement Cases, 2012 WL 1570765 at *10, and in which there have been no indications of abusive litigation tactics.  See Malibu Media, 285 F.R.D. at 278.

users into [this type of] litigation, placing a burden upon them[,] . . . weighs against allowing the discovery as designed." SBO Pictures, Inc. v. Does 1-3,3036, No. 11 Civ. 4220, 2011 WL 6002620, at *3 (N.D. Cal. Nov. 30, 2011).

Several courts have also found that defendants did not participate in the same "transaction" or "occurrence" for the purposes of Fed. R. Civ. P. 20 where the alleged infringement did not occur simultaneously. In the cases at bar, Wiley alleges that each of the various defendants engaged in infringing conduct on only one of several days at issue.[4] The "differing dates and times of each Defendant's alleged sharing do not allow for an inference that the Defendants were acting in concert" because they did not all share the infringed works with one another. Raw Films, Inc. v. Does 1-32, No. 11 Civ. 2939 2011 WL 6840590, at *2 (N.D. Ga. Dec. 29, 2011); see also In re BitTorrent Adult Film Copyright Infringement Cases, 2012 WL 157065, at *11 ("*even assuming that the John Does are the actual infringers*, the assertion that defendants were acting in concert rests upon a thin reed." (emphasis in original)). The only common threads uniting Defendants in these matters are that they are alleged to have IP addresses which were used to engage in the unauthorized reproduction and distribution of protected works via BitTorrent, an allegation insufficient to support joinder. DigiProtect USA Corp., 2011 WL 4444666, at *3 n.3.

Accordingly, the Court exercises its discretion *sua sponte* to sever John Does 2-22 in matter number 12 Civ. 4231, John Does 2-24 in matter number 12 Civ. 4232, and John Does 2-21 in matter number 12 Civ. 4730. See Fed. R. Civ. P. 20(b), 21, 42(b). The actions against the severed defendants are hereby dismissed, without prejudice, because Wiley has failed to pay the

---

[4] Specifically, Wiley alleges that Defendants reproduced and distributed Windows 7 Secrets and The Six Figure Income on May 17, 2012; May 22, 2012; and May 24, 2012. The Fat Burning Bible was reproduced and distributed on May 30, 2012; June 1, 2012; June 6; 2012; June 8, 2012; and June 12, 2012.

requisite filing fees necessary to bring these additional lawsuits.  Wiley may reinstate its actions against the severed defendants by filing individualized complaints against them and paying the requisite filing fees.  If it chooses to do so, any pre-service discovery efforts must comply with the protocol set out in Digital Sins 245, 2012 WL 1744838, at *6-8:

(1) Plaintiff must bring to the attention of this Court the existence of any potentially related cases "in order to avoid unnecessary duplication of judicial effort."  Local Civ. R. 1.6(a).

(2) Subpoenas may issue seeking the telephone numbers or email addresses of the individuals who are assigned a particular IP address.  Within seven days of service of each subpoena, the ISP shall reasonably attempt to identify the John Doe sued, and provide that John Doe (not Plaintiff) with a copy of the subpoena and a copy of this order (which Plaintiff must attach to the subpoena).  If an ISP is unable to determine the identity of the user of a particular IP address to a reasonable degree of technical certainty, it shall notify Plaintiff in writing, so that a record can be kept for review.

(3) An ISP may move to quash or otherwise object to any subpoena within 21 days of its receipt.  Similarly, each potential defendant shall have 21 days from their receipt of the subpoena from the ISP to move to quash or otherwise object to it.

(4) Absent such opposition, the ISPs shall produce the information sought to the Court, not to Plaintiff, within 21 days after notifying the defendant.  Such submission shall be *ex parte* and under seal.  The information will be disclosed to Plaintiff by the Court.  No such disclosure shall include any email addresses or telephone numbers.

(5) Plaintiff may use the information disclosed only for the purpose of litigating the matter at bar.

## II. Expedited Discovery

Having severed all but the first John Doe defendant in each of the matters brought by Wiley, the Court now considers Wiley's request for expedited discovery concerning the remaining defendants. Requests for a court order authorizing expedited discovery are evaluated under a "flexible standard of reasonableness and good cause." Next Phase, 284 F.R.D. at 171 (quoting Digital Sins 176, 279 F.R.D. at 241). There is good cause to grant expedited discovery in the instant matters "[b]ecause [Wiley] has alleged a *prima facie* case of copyright infringement[5] and it cannot identify [the] John Doe[s] without a court-ordered subpoena." Id. Accordingly, Wiley's motion for expedited discovery is granted as to the remaining defendants.

### CONCLUSION

For the foregoing reasons, John Does 2-22 in matter number 12 Civ. 4231, John Does 2-24 in matter number 12 Civ. 4232, and John Does 2-21 in matter number 12 Civ. 4730 are severed and the cases against them are dismissed without prejudice. The *ex parte* applications for expedited discovery are granted as to John Doe 1 in each of the aforementioned matters. The Clerk of the Court is directed to terminate the applications at docket number 3 in 12 Civ. 4231, docket number 3 in 12 Civ. 4232, and docket number 2 in 12 Civ. 4730.

Dated: New York, New York

March /5, 2013

SO ORDERED

*[signature]*

PAUL A. CROTTY
United States District Judge

---

[5] Because Wiley has set out a *prima facie* case of copyright infringement, see Wiley v. Does 1-30, 284 F.R.D. 185, 189 (S.D.N.Y. 2012), it is not necessary to determine whether it has done so for its other causes of action.

9